## Case No. 6,344.

### HELLRIGLE v. OULD.

[4 Cranch; C. C. 72.][1]

Circuit Court, District of Columbia. May Term, 1830.

SALE FOR TAXES—POWER OF COLLECTOR—WASHINGTON, D. C.

1. In 1828, city lots in Washington, D. C., could not be sold for taxes due to the corporation, if there was upon them personal property sufficient to pay the taxes. The charter of 1820, was the only authority under which such lots could be sold, and that act does not, in such case, authorize the sale, by the collector, even with the assent of the person to whom they are assessed, or even with the assent of the true owner.

2. The collector could not sell the fee-simple, if the tenant was tenant for life only, and if the estate for life was of sufficient value to pay the taxes.

3. Quaere, whether the tenant in whose name a lot is assessed, can. by suffering the taxes to accumulate, get a better title than he had before, by a collector's sale for his own default.

Ejectment for lot No. 7, in the square No. 320, in the city of Washington. The plaintiffs claimed as heirs or devisees of Philip Hellrigle. The defendant [Henry Ould] claimed under a tax-sale.

The cause was tried on the 27th and 28th of May, 1830, when Mr. Key and Mr. Marbury, for plaintiffs, prayed the court to instruct the jury, that the defendant gained no title under the collector's sale given by him in evidence.

The question was fully argued by Mr. Coxe and Mr. Jones, for defendant, and by Mr. Key and Mr. Marbury, for the plaintiffs, and the court being about to deliver the following opinion, in which the judges were unanimous, the parties came to a compromise.

OPINION OF THE COURT. The question is, whether the heirs of Philip Hellrigle were divested of their legal estate in the lot in

question, by a sale made in the year 1828, by the collector of taxes for the city of Washington, under the following circumstances. Some time between the years 1820 and 1824, the lot was sold by a collector of taxes in Washington, for taxes assessed to "the heirs of Hellrigle," and was purchased by Mr. James M. Varnum, who obtained a deed for the same from the mayor, and sold it to another, under whom the present defendant entered and built a house on the lot. That sale was void by reason of some irregularity in the proceedings. Subsequent taxes were assessed upon the lot, in the name of the defendant, which he did not pay, but authorized the collector, in writing, to sell the same, although there was personal property enough, of his own, upon the lot, to pay them; and at the same time avowed his purpose to be to cure a defect in his title. The sale was accordingly made after the passing of the act of congress of the 26th of May, 1824 (4 Stat. 43), the same having been advertised agreeably to the second section of that act, in which advertisement the name of the defendant was stated as the name of the person to whom the same was assessed on the books of the corporation. At that sale the defendant became the purchaser; and the property, not having been redeemed within the two years allowed by the act of 1820, § 10 [3 Stat. 589], he obtained a deed in fee form from the mayor under the seal of the corporation of Washington. At the time of the said assignment and advertisement and sale respectively, the legal estate was in Barbara Hellrigle, the widow of Philip, as tenant for life under the last will of her husband, the remainder in fee having descended upon the lessors of the plaintiffs, some of whom were, and yet are minors, under the age of twenty-one years; and who have, therefore, a right still to redeem under the tenth section of the act of 1820, and the sixth section of that of 1824. The lot could have been leased for five or six dollars a month, and the amount of taxes due at the time of sale was ten dollars. The widow died some months after the sale. The whole lot was sold to the defendant himself for the exact amount of the taxes due upon it and the expenses of sale. The question is, whether this sale divested the lessors of the plaintiff of their title? The act of 15th May, 1820, is the only act which authorizes the sale. The lot could not have been lawfully sold by the collector, under that act, if there was upon it personal property of sufficient value to pay the taxes. That act does not authorize it to be sold by the collector, in such case, even with the assent of the person to whom it should be assessed; nor even with the assent of the true owner. The assent, indeed, of the true owner might have barred himself from controverting the validity of the sale; so the assent of the person in whose name it is assessed is, perhaps, sufficient to bar him, but not the true owner, nor any other person. The sale, therefore, was void

---

[1] [Reported by Hon William Cranch, Chief Judge.]

as to the true owner; not because it was not assessed or advertised in the name of the lawful owner, nor by reason of the amount of taxes due thereon not being correctly stated, which are the only irregularities cured by the second section of the act of 1824; but because the lot itself was not liable to be sold.

Again. The lot, that is, the fee-simple estate in the lot, could not be sold, when there was a tenant for life, whose estate was sufficient to defray the taxes thereon. The 10th section contains an express prohibition to that effect. "Provided also, that no sale shall be made, in pursuance of this section, of any improved property, whereon there is personal property of sufficient value to pay the said taxes." "And provided, moreover, that where the estate of the tenant in default, as for years, or for life or lives, shall be sufficient to defray the taxes chargeable thereupon, such estate only shall be liable to be sold under the provisions of this act." It is said that the officers of the corporation did not know that there was such a tenancy for life, as the will, under which it was claimed, was made in Bladensburgh, (out of this district,) and proved in Alexandria, where the testator died and had assets. But the prohibition has no exception in such a case. If the corporation sell, they sell at their peril. They are bound to inquire what kind of an estate the person has, to whom they assess the taxes, before they proceed to sell. If the fact was, at the time of sale, that there was a tenant for life, whose estate was sufficient to defray the taxes chargeable thereupon, that estate only could be sold.

Again. The person in whose name the property is assessed may be considered prima facie the true owner until the contrary appears. The defendant in the present case has submitted to the assessment, and admitted that he is the person chargeable with the tax, and for whose default the lot was sold, by giving his assent that it should be sold, although there was upon the lot, at the time of sale, personal property, of sufficient value to pay the taxes then due. Can a person, by suffering a lot to be sold for his own default, and becoming the purchaser at the sale, get a better title than he had before? This is an important question, which the court, at present, is not prepared to answer; and as the opinion, upon either of the two former points, is decisive of the question submitted, the court will not undertake to decide the latter until its decision shall become necessary.

---

HELMBOLD (WHEELER v.). See Case No. 17,496.

HELMS (SWEETSER v.). See Case No. 13,-689.

HELMSLEY (COGGINS v.). See Case No. 14,109.

HELRIGGLE (UNITED STATES v.). See Case No. 15,344.